NO. 12-08-00368-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

BROOKSHIRE BROTHERS, LTD.            ,           §          APPEAL
FROM THE 159TH

APPELLANT            

 

V.                                                                    §          JUDICIAL
DISTRICT COURT

            

JERRY ALDRIDGE,

APELLEE                                                     §          ANGELINA
COUNTY, TEXAS      







MEMORANDUM
OPINION

            Brookshire
Brothers, Ltd. appeals the trial court’s judgment in a premises liability
lawsuit brought by Jerry Aldridge.  In four issues, Brookshire Brothers asserts
that the evidence is insufficient to support the judgment, that the trial court
erred in admitting evidence of spoliation, and that the trial court erred by
charging the jury with a spoliation instruction.  We affirm.

 

Background

            Aldridge
slipped on a liquid substance and fell while shopping at a Brookshire Brothers’
store in Jacksonville, Texas.  Aldridge suffered a substantial spinal injury as
a result of the fall.  Initially unaware of the extent of his injury, Aldridge
notified Brookshire Brothers employees of the substance and his fall, purchased
some items, and left the store.  Shortly thereafter, Aldridge’s pain began to
increase, and he decided to seek out medical treatment at a local emergency
room.  Several days later, Aldridge returned to the store and informed a
Brookshire Brothers’ manager of his injury.  The manager prepared a formal
incident report, noting that Aldridge had injured his neck and back.  

            Brookshire
Brothers later began paying for Aldridge’s medical care, including treatment by
a neurosurgeon.  During this time, Brookshire Brothers also preserved a short
segment of a surveillance video recording of the day in question, but later allowed
the remainder to be recorded over by the recording system.  The preserved
segment, which was less than eight minutes in length, showed Aldridge entering
the store, falling, and leaving.  It also showed Aldridge looking at items in
certain parts of the store.  But it did not include portions of the original
recording that could have shown the source of the substance on the floor,
additional employees that may have seen the substance, or the amount of effort
necessary to clean the substance from the floor. Six minutes and fifty-three
seconds of the preserved video were from the period directly before Aldridge
fell. 

            After
a failed attempt to overcome his injury and return to gainful employment,
Aldridge filed a premises liability action against Brookshire Brothers.  The
case was tried to a jury.  The trial court admitted evidence relating to the
destruction of the video recording.  The trial court also charged the jury with
a spoliation instruction.  The jury subsequently reached a verdict in favor of
Aldridge and the trial court rendered judgment on the verdict.  This appeal
followed.

 

Evidentiary Sufficiency

            In
its third and fourth issues, Brookshire Brothers asserts that the evidence is
legally and factually insufficient.  Specifically, Brookshire Brothers alleges
that the evidence is insufficient to support the elements of knowledge,
proximate cause, and breach of care.

Standard
of Review

            When
reviewing a jury’s verdict for legal sufficiency, we may set aside the verdict
only if the evidence at trial would not enable reasonable and fair-minded
people to reach the verdict under review. City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005).  In making this determination, we must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not. Id.  Jurors are the sole
judges of the credibility of the witnesses and the weight to give their testimony.
Id. at 819.  They may choose to believe one witness and
disbelieve another, and reviewing courts may not impose their own opinions to
the contrary. Id.  Most credibility questions are implicit rather
than explicit in a jury’s verdict. Id.  Accordingly, reviewing
courts must assume jurors decided all of them in favor of the verdict if
reasonable human beings could do so. Id.  

            Nor
is it necessary to have testimony from both parties before jurors may
disbelieve either. Id. at 819-20.  Jurors may disregard even
uncontradicted and unimpeached testimony from disinterested witnesses. Id.
at 820.  Jurors are not free to believe testimony that is conclusively
negated by undisputed facts. Id.  But whenever reasonable jurors
could decide what testimony to discard, a reviewing court must assume they did
so in favor of their verdict, and disregard it in the course of legal
sufficiency review. Id.

            In
addition, it is the province of the jury to resolve conflicts in the evidence. Id.
 Consequently, we must assume that, where reasonable, the jury resolved
all conflicts in the evidence in a manner consistent with its verdict. Id. 
If reasonable jurors could resolve conflicting evidence either way, reviewing
courts must presume they did so in favor of the prevailing party, and disregard
the conflicting evidence in their legal sufficiency review. Id.
at 821.  Where conflicting inferences can be drawn from the evidence, it is
within the province of the jury to choose which inference to draw, so long as
more than one inference can reasonably be drawn. Id.  Therefore,
we must assume jurors made all inferences in favor of their verdict if
reasonable minds could, and disregard all other inferences in our legal
sufficiency review. Id.

            Regarding
factual sufficiency challenges, where a party who did not have the burden of
proof on an issue asserts that a jury’s verdict is contrary to the evidence, we
must overrule the complaint unless the verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  In
conducting our review, we must consider all of the evidence that supports and
that which is contrary to the verdict. Sosa v. City of Balch Springs,
772 S.W.2d 71, 72 (Tex. 1989).  We must remember that the jury is the sole
judge of the credibility of the witnesses. See Santa Fe Petroleum, L.L.C.
v. Star Canyon Corp., 156 S.W.3d 630, 638 (Tex. App.—Tyler 2004, no
pet.)  The jury may take into consideration all of the facts and surrounding
circumstances in connection with the testimony of each witness and accept or
reject all or any part of that testimony. See id.  Where enough
evidence is before the jury so that reasonable minds could differ on the
meaning of the evidence, or the inferences and conclusions to be drawn from the
evidence, we may not substitute our judgment for that of the jury. See id.

Applicable
Law         

            It
is undisputed that Aldridge was an invitee of Brookshire Brothers. See Rosas
v. Buddies Food Store, 518 S.W.2d 534, 536 (Tex. 1975) (invitee is
person who enters premises with possessor’s express or implied knowledge and
for parties’ mutual benefit).  As such, Brookshire Brothers owed him a duty to
exercise reasonable care to protect him from dangerous conditions in the store
known or discoverable to it. See Wal-Mart Stores, Inc. v. Gonzalez,
968 S.W.2d 934, 936 (Tex. 1998).  The duty a premises owner/operator owes to
its invitees is not that of an insurer. Brinson Ford, Inc. v. Alger,
228 S.W.3d 161, 162 (Tex. 2007).  In other words, the condition is not
unreasonably dangerous simply because it is not foolproof. See id. at
163.

            To
recover damages in a premises liability case, a plaintiff must prove the
following:    (1) the owner/operator had actual or constructive knowledge of
some condition on the premises; (2) the condition posed an unreasonable risk of
harm; (3) the owner/operator did not exercise reasonable care to reduce or
eliminate the risk; and (4) the owner/operator’s failure to use reasonable care
proximately caused the plaintiff’s injuries. See Gonzalez, 968
S.W.2d at 936.  An invitee’s suit against a store owner/operator is a simple
negligence action. Corbin v. Safeway Stores, Inc., 648 S.W.2d
292, 295 (Tex. 1983).  A store owner/operator’s duty is to exercise reasonable
care to protect against danger from a condition on the premises that creates an
unreasonable risk of harm of which the owner/operator knew or by the exercise
of reasonable care could discover. See CMH Homes, Inc. v. Daenen,
15 S.W.3d 97, 101 (Tex. 2000).  The crux of this duty depends on actual or
constructive knowledge of a dangerous condition that a reasonable inspection
would reveal. See id.  The proximate cause element has two
components: cause-in-fact and foreseeability. LMB, Ltd. v. Moreno,
201 S.W.3d 686, 688 (Tex. 2006).  The test for cause-in-fact, or “but-for”
causation, is whether (1) the act or omission was a substantial factor in
causing the injury and (2) without the act or omission the harm would not have
occurred. Id.

            In
premises liability cases, there is no single test for determining actual
knowledge that a condition presents an unreasonable risk of harm. See Univ.
of Tex.—Pan Am. v. Aguilar, 251 S.W.3d 511, 513 (Tex. 2008).  Courts
generally consider whether the premises owner/operator has received reports of
prior injuries or reports of the potential danger presented by the condition. See
id.  Alternatively, constructive knowledge can be established by a
showing that the condition had existed long enough for the owner or operator to
have discovered it upon reasonable inspection. See Daenen, 15
S.W.3d at 101.

Discussion

            Aldridge
presented seven witnesses at trial and published to the jury the portion of the
video recording preserved by Brookshire Brothers.  Aldridge testified that he slipped
on a liquid substance.  The last part of the video recording supported this
testimony by showing an employee signaling that a cleanup was required in the
area where Aldridge fell.  Six minutes and fifty-three seconds of the preserved
video were from the period directly before Aldridge fell. Because no spill
could be seen on the video, it was some evidence that the substance likely was on
the floor during that period.  

            Aldridge
presented the deposition testimony of Jonathan Tyler, a Brookshire Brothers
manager.  Tyler testified that, in light of the number of employees working in
that area (which was near the check-out area of the store), the substance
should have been noticed and cleaned up within less than five minutes. 
Further, the video showed a Brookshire Brothers employee walking very near the
location where Aldridge fell almost three minutes beforehand.  Tyler testified
that employees are trained to look out for dangerous conditions on the floor
and that the employee should have noticed the substance.  The video also showed
another Brookshire Brothers employee passing nearby four times within five
minutes before the fall.  

            One
known risk at the store was a rotisserie chicken display.  Tyler testified that
it was known that the containers for the chickens could leak when carried
throughout the store by patrons.  Tyler testified further that the rotisserie
chicken display was near the area where Aldridge fell.      Aldridge also
offered documentary evidence of a manager’s inspection of the store.  The
document, a log entry, indicated that a manager had inspected the store eight
minutes before the fall.  

            Finally,
the video supported the reasonable inference that the slippery substance
covered a large area, and was thus more noticeable.  Tyler testified that
employees are required to carry a paper towel with them to clean up small
spills.  If the spill is too large, the employees are to enlist help to clean up
the spill.  Here, the video showed an employee calling for help to clean up the
substance in question.  Thus, the video was some evidence that the spill was
too large to clean up with the towel each employee carries.  

            The
video also showed the employee who noticed the substance pointing to the
floor.  The area pointed to is near, but not exactly the same, as the area of
the fall.  Robert Gilmer, Vice-President of Human Resources for Brookshire
Brothers, testified that employees were trained to look out for spilled
substances.  And Gilmer admitted that, if the substance extended from where Aldridge
fell to the area pointed to, a Brookshire Brothers employee should have noticed
it.

            Brookshire
Brothers disputed this evidence.  For example, Gilmer testified that Aldridge
himself did not notice the spill, and therefore it must have been a small one. 
Gilmer also testified that employees cannot guarantee perfect safety and that
Brookshire Brothers employees are expected to be on the lookout, but not to carefully
inspect each area.

            In
light of the record before us, we hold that the evidence is legally and
factually sufficient to support the jury’s verdict in relation to the elements
of knowledge, proximate cause, and breach of care.  In the context of legal
sufficiency, we hold that the evidence at trial would enable reasonable and
fair minded people to reach the verdict under review. See City of Keller,
168 S.W.3d at 827.  In the context of factual sufficiency, we hold that the
verdict is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong or manifestly unjust. See Cain, 709 S.W.2d at 176. 
We overrule Brookshire Brothers’ third and fourth issues.

 

Spoliation           

            In
its first and second issues, Brookshire Brothers challenges the trial court’s
decisions to admit evidence of spoliation and to include a spoliation
instruction in the jury charge.

Standard
of Review

            Spoliation
is the improper destruction of evidence relevant to a case. Adkison v.
Adkison, No. 12-06-00077-CV, 2007 WL 259550, at *3 (Tex. App.—Tyler
Jan. 31, 2007, no pet.) (mem. op). 

 

Evidence spoliation is not a new concept.  For years
courts have struggled with the problem and devised possible solutions. 
Probably the earliest and most enduring solution was the spoliation inference
or omnia praesumuntur contra spoliatorem: all things are presumed
against a wrongdoer.  In other words, within the context of the original
lawsuit, the factfinder deduces guilt from the destruction of presumably
incriminating evidence.

 

 

Trevino v.
Ortega, 969 S.W.2d 950, 952 (Tex. 1998) (internal citation omitted). 
This traditional response to the problem of evidence spoliation properly frames
the alleged wrong as an evidentiary concept, not a separate cause of action. Id. 
Spoliation causes no injury independent from the cause of action in
which it arises. Id.  “If, in the ordinary course of affairs, an
individual destroys his or her own papers or objects, there is no independent
injury to third parties.” Id.  The destruction becomes relevant
only when someone believes that those destroyed items are instrumental to his
or her success in a lawsuit. Id.

            “[W]hen
spoliation occurs, there must be adequate measures to ensure that it does not
improperly impair a litigant’s rights . . . .” Id. at 953.  It is
simple, practical, and logical to rectify any improper conduct within the
context of the lawsuit in which it is relevant. Id.  “Indeed,
evolving remedies, sanctions and procedures for evidence spoliation are
available under Texas jurisprudence.” Id.  Trial judges have
broad discretion to take measures ranging from a jury instruction on the
spoliation presumption to, in the most egregious case, death penalty sanctions.
Id.  As with any discovery abuse or evidentiary issue, there is
no one remedy that is appropriate for every incidence of spoliation; the trial
court must respond appropriately based upon the particular facts of each
individual case.[1] Id.

            The
loss or destruction of evidence may seriously impair a party’s ability to
present its case. Tex. Electric Coop. v. Dillard, 171 S.W.3d 201,
208 (Tex. App.—Tyler 2005, no pet.) (citing Wal-Mart Stores, Inc. v.
Johnson, 106 S.W.3d 718, 721 (Tex. 2003)).  When a party believes that
another party has improperly destroyed evidence, it may either request a
spoliation presumption instruction or move for other sanctions. Adkison,
2007 WL 259550, at *3 (citing Trevino v. Ortega,
969 S.W.2d 950, 954 (Tex. 1998) (Baker, J., concurring)).  At that point, a
trial court should determine whether a presumption instruction or another
sanction is justified. Adkison, 2007 WL 259550, at *3 (citing
Trevino, 969 S.W.2d at 954 (Baker, J., concurring)).

            The
trial court enjoys discretion to fashion an appropriate remedy for negligent
spoliation. See Johnson, 106 S.W.3d at 721.

 

Because parties have a duty to reasonably preserve
evidence, it is only logical that they should be held accountable for either
negligent or intentional spoliation.  While allowing a court to hold a party
accountable for negligent as well as intentional spoliation may appear
inconsistent with the punitive purpose of remedying spoliation, it is clearly
consistent with the evidentiary rationale supporting it because the remedies
ameliorate the prejudicial effects resulting from the unavailability of
evidence.  In essence, it places the burden of the prejudicial effects upon the
culpable spoliating party rather than the innocent nonspoliating party.

 

 

See Trevino,
969 S.W.2d at 957 (Baker, J., concurring) (internal citation omitted).  “Furthermore,
by punishing negligent conduct, courts will deter future spoliation.  The
theory of deterrence is not merely limited to deterring intentional conduct.  It
applies equally to negligent conduct.” See id. at 957 n.1.

            Before
any failure to produce material evidence may be viewed as discovery abuse, the
opposing party must establish that the nonproducing party had a duty to preserve
the evidence in question. Dillard, 171 S.W.3d at 209 (citing Johnson,
106 S.W.3d at 722).  There must be a sufficient foundational showing that the
party who destroyed the evidence had notice both of the potential claim and of
the evidence’s potential relevance thereto. Dillard, 171 S.W.3d at
209 (citing Johnson, 106 S.W.3d at 722).  An objective test for
anticipation of litigation is whether a reasonable person would conclude from
the severity of the accident and other circumstances surrounding it that there
was a substantial chance for litigation. Dillard,
171 S.W.3d at 209 (citing Johnson, 106 S.W.3d at 722). “A party
should not be able to subvert the discovery process and the fair administration
of justice simply by destroying evidence before a claim is actually filed.” See
Trevino, 969 S.W.2d at 955 (Baker, J., concurring).

Evidence
of Spoliation

            In
its first issue, Brookshire Brothers complains that the trial court erred by
admitting evidence relating to the issue of spoliation.  The complained of
evidence included documentary evidence showing that Brookshire Brothers paid
for Aldridge to be treated by a neurosurgeon before it allowed the unpreserved
portions of the video recording from the area of the store in question to be destroyed. 
It was undisputed that the preserved portion of the video recording accounted
for less than eight minutes of a recording that covered a twenty-four hour
period.  The preserved recording included Aldridge’s entering the store,
falling, and leaving the store.

            First,
Brookshire Brothers asserts that it had no duty to preserve the unpreserved
portions of the video recording.  Second, it asserts that Aldridge was not
prejudiced by its failure to preserve any additional portions of the recording.
Third, it asserts that it provided a reasonable explanation for not preserving
additional portions.  And, fourth, it asserts that, because Aldridge failed to
establish the former elements of spoliation, the evidence was improperly
prejudicial under rule 403 of the Texas Rules of Evidence.

 

 

            Duty

            Here,
the trial court was presented with the question of duty and resolved it against
Brookshire Brothers.  This was based on the undisputed fact that Brookshire
Brothers had control of the entire video recording.  After Aldridge returned to
the store and “reported his claim,” Brookshire Brothers preserved less than
eight minutes of the recording.  The remainder was subsequently destroyed as
part of the recording system utilized by Brookshire Brothers.  

            By
the time the unpreserved remainder was destroyed, Aldridge had notified
Brookshire Brothers of his injury, a Brookshire Brothers manager had prepared a
written incident report noting a neck and back injury, and Brookshire Brothers
had begun paying for Aldridge to be treated by a neurosurgeon.  Evidence showed
that Brookshire Brothers routinely compensated injured customers for two
initial doctor’s visits.  However, this treatment went beyond those two visits
and involved a specialist.  Indeed, Brookshire Brothers’ own correspondence
during the period in question referred to Aldridge as having a “claim.” 
Finally, Aldridge had, by this time, requested to see a portion of the video
recording from the day in question.

            “A
party should not be able to subvert the discovery process and the fair
administration of justice simply by destroying evidence before a claim is
actually filed.” See id.  Here, a reasonable person would
conclude from the severity of the accident and other circumstances surrounding
it that there was a substantial chance for litigation.  See Johnson,
106 S.W.3d at 722; Dillard, 171 S.W.3d at 209.  Further, because
of the nature of the video in question, it was reasonable to conclude that
Brookshire Brothers was on notice of its potential relevance.  See Johnson,
106 S.W.3d at 722; Dillard, 171 S.W.3d at 209.

            Prejudice
to Aldridge

            Brookshire
Brothers asserts that Aldridge was not prejudiced by its failure to preserve
any additional portions of the recording.  In short, Brookshire Brothers argues
that Aldridge failed to present sufficient evidence to the trial court that he
was prejudiced by the destruction of the unpreserved portions.  However, the
small portion of the video preserved was sufficient to show that the destroyed
video would have been highly probative.

            First,
the camera recorded a part of the store that included the rotisserie chicken
display and the area where Aldridge fell.  Second, it showed persons passing by
that area.  Therefore, the video would have been some evidence of when a spill
occurred or the length of time that the spill remained.  That the video would
probably have contained evidence of these facts is not speculation but is a
reasonable inference from the portion of the video that was retained.  In
addition, the video would have shown the cleanup efforts and any immediate
investigation, both demonstrating the size of the spill.  And the video might
have shown the manager’s store inspection that was noted in the log book.

            To
the extent that a court could not discern with certainty what else might be
shown on the video, that absence of proof is a direct result of Brookshire
Brothers destroying it.  In fact, the evidence at trial, including the
testimony of Tyler and Gilmer, established that no person, including employees
of Brookshire Brothers, ever viewed any of the unpreserved portions of the
video recording.  Thus, it was proper for the trial court to give deference to
the nonspoliating party’s assertions of relevancy. See Trevino,
969 S.W.2d at 958 (Baker, J., concurring); see also Johnson, 106
S.W.3d at 721 (intentional spoliation of relevant evidence raises presumption
that evidence would have been unfavorable to spoliator).  

            We
note Brookshire Brothers’ argument that Aldridge could have, perhaps, conducted
additional discovery to discern any relevant information.  However, the bare
allegation that currently unknown evidence might have existed is not sufficient
to overcome the presumption that Brookshire Brothers destroyed the recording
for a reason. See Trevino, 969 S.W.2d at 958 (Baker, J.,
concurring); see also Johnson, 106 S.W.3d at 721.  Moreover, any
other evidence would have been in the form of testimony, subject to the
witnesses’ misperceptions and fading memories.  And this testimony may have
been from Brookshire Brothers employees, who could have had interests adverse
to Aldridge.  As counsel for Brookshire Brothers explained to the jury when
speaking of the preserved portion of the recording, “the video in this case is
your best friend,” “the video doesn’t lie.  It’s just credible.”

            Reasonable
Explanation

            Brookshire
Brothers asserts that it provided a reasonable explanation for not preserving
additional portions.  Specifically, Brookshire Brothers claims that it
preserved what Gilmer believed was the amount necessary to show whether a fall
occurred.  According to Brookshire Brothers, “[n]othing more was requested of
Brookshire Brothers [by Aldridge] until long after the original video had been
[destroyed] in the ordinary course of business.”  However, as the late Justice
Baker explained, 

 

[a] spoliator can defend against an assertion of
negligent or intentional destruction by providing other explanations for the
destruction.  For example, if the destruction of the evidence was beyond the
spoliator’s control or done in the ordinary course of business, the court may
find that the spoliator did not violate a duty to preserve evidence. 
Importantly though, when a party’s duty to preserve evidence arises before the
destruction or when a policy is at odds with a duty to maintain records, the
policy will not excuse the obligation to preserve evidence. 

 

 

See Trevino,
969 S.W.2d at 957 (Baker, J., concurring).  Here, as we explained above,
Brookshire Brothers had a duty to preserve additional portions of the destroyed
recording.  The fact that Brookshire Brothers destroyed these portions before a
request to preserve them was made or a lawsuit filed does not override the fact
that it destroyed these portions during a period in which it had a duty to
preserve them. See id.

            403
Prejudice

            Finally,
Brookshire Brothers argues that, because Aldridge failed to establish the
formerly addressed elements of spoliation, the evidence was improperly
prejudicial under rule 403 of the Texas Rules of Evidence.  “In the context of
a trial, there are few, if any, more inflammatory accusations than that one
party destroyed evidence.” Lively v. Blackwell, 51 S.W.3d 637,
642 (Tex. App.—Tyler 2001, pet. denied).  Nonetheless, the trial court has the
discretion to admit or exclude evidence of spoliation to the jury. Id.
at 641.  Where the only basis for the accusation consists of speculation and
conjecture and a reasonable explanation for the missing evidence exists, such
an accusation can unfairly taint the jurors’ perception of the alleged
spoliator as one who is dishonest and deceitful. Id. at 642. 
In such a situation, it is legitimate and proper to exclude evidence of
alleged spoliation. Lively, 51 S.W.3d at 642 (citing Tex. R. Evid. 403).

            Here,
unlike the situation mentioned in Lively, the evidence of
spoliation rose beyond “speculation and conjecture.” See Lively, 51
S.W.3d at 642.  And as we have discussed above, no “reasonable explanation for
the missing evidence exists.” See id.  Instead, the evidence of
spoliation included sufficient evidence of the above described elements.  In
light of Brookshire Brothers’ argument, we cannot say that it has shown a 403
objection could be properly sustained. See Lively, 51
S.W.3d at 642 (citing Tex. R. Evid.
403)

            Conclusion

            A
trial court abuses its discretion when its decision is arbitrary, unreasonable,
or without reference to any guiding rules or legal principles. K-Mart
Corp. v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000).  “The mere fact
that a trial judge may decide a matter within his discretionary authority in a
different manner than an appellate judge in a similar circumstance does not
demonstrate that an abuse of discretion has occurred.” Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985).  From the
arguments raised by Brookshire Brothers, we cannot discern that the trial court
abused its discretion by admitting spoliation evidence at trial.

Spoliation
Instruction

            In
its second issue, Brookshire Brothers complains of the trial court’s decision
to charge the jury with a spoliation instruction.  The instruction in question
read as follows:

 

In this case, Brookshire Brothers permitted its video
surveillance system to record over certain portions of the store surveillance
video of the day of the occurrence in question.  If you find that Brookshire
Brothers knew or reasonably should have known that such portions of the store
video not preserved contained relevant evidence to the issues in this case, and
its non-preservation has not been satisfactorily explained, then you are
instructed that you may consider such evidence would have been unfavorable to
Brookshire Brothers.

 

 

Brookshire
Brothers alleges that, based upon its previous arguments regarding the
admission of spoliation evidence, a spoliation charge was improper.[2] 


            “A
trial judge has broad discretion in determining whether to provide a jury with
a spoliation presumption instruction.” Dillard, 171 S.W.3d at 208
(citing Johnson, 106 S.W.3d at 721; Trevino, 969
S.W.2d at 953); see Lively, 51 S.W.3d at 642.  A spoliation
instruction is an instruction given to the jury outlining permissible
inferences they may make against a party who has lost, altered, or destroyed
evidence. Dillard, 171 S.W.3d at 208; Hopper v. Swann,
No. 12-02-00269-CV, 2004 WL 948526, at *2 (Tex. App.—Tyler Apr. 30, 2004, no
pet.) (mem. op.).  Generally, two rules apply to presumptions that derive from
the nonproduction of evidence. Lively, 51 S.W.3d at 643.  One
rule is that the intentional spoliation of evidence relevant to a case raises a
presumption that the evidence would have been unfavorable to the spoliator. Id.;
see Johnson, 106 S.W.3d at 721; Adkison, 2007
WL 259550, at *3; Dillard, 171 S.W.3d at 208.  The second rule
states that the failure to produce evidence within a party’s control raises a
rebuttable presumption that the missing evidence would be unfavorable to the
nonproducing party. Lively, 51 S.W.3d at 643.  “However, if the
nonproducing party testifies as to the substance or contents of the missing
evidence, the opposing party is not entitled to the presumption.” Id.

            Here,
by saving a small portion of video and allowing the remainder to be destroyed, Brookshire
Brothers engaged in the “intentional spoliation of evidence relevant to a case.”
Cf. Dillard, 171 S.W.3d at 208; Lively, 51
S.W.3d at 643.  In light of the evidence before the trial court, we hold that
the trial court did not abuse its “broad discretion” by charging the jury with
the above spoliation instruction. See Dillard, 171 S.W.3d at 208;
Lively, 51 S.W.3d at 642.

Conclusion

            The
trial court did not abuse its discretion when admitting the spoliation evidence
or charging the jury with the spoliation instruction.  Therefore, we overrule
Brookshire Brothers’ first and second issues.

 

Disposition

            We affirm
the judgment of the trial court.

 

                                                                                                Brian Hoyle

                                                                                         
            Justice

 

 

Opinion delivered July 30, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









                [1] 
The supreme court has explained that

 

[e]vidence may be unavailable for
discovery and trial for a variety of reasons.  Evidence may be lost, altered or
destroyed willfully and in bad faith or it may be lost for reasons completely
innocent.  Sometimes, lost evidence may be easily replicated, or it may be so
marginal that it has little or no effect on the outcome of the case.  On other
occasions, the loss or destruction of evidence may seriously impair a party’s
ability to present its case.  A trial judge should have discretion to fashion
an appropriate remedy to restore the parties to a rough approximation of their
positions if all evidence were available.  These remedies must generally be
fashioned on a case-by-case basis. 

 

Wal-Mart Stores, Inc. v. Johnson, 106
S.W.3d 718, 721 (Tex. 2003) (internal citation omitted).





                [2]
We have previously implied that a party may seek either a spoliation
instruction or another sanction. See Adkison, 2007 WL 259550,
at *3.  However, a trial court must first be able to admit evidence of
spoliation before charging the jury with a spoliation instruction of the type in
question.  Further, we did not hold that a situation could never exist where
both an instruction and another sanction were proper.